IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAMELA O.,[1]

       Plaintiff,

    v.

NANCY BERRYHILL,
Acting Commissioner of the Social Security
Administration,

       Defendant.
_____

Civ. No. 3:18-cv-0270-MC

OPINION AND ORDER

MCSHANE, Judge:

     Plaintiff Pamela O. brings this action for judicial review of the Commissioner's decision

denying her application for disability insurance benefits ("DIB") under Title II of the Social

Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

     On June 4, 2014, Plaintiff applied for DIB, alleging disability as of May 1, 2013. Tr. 18.[2]

Plaintiff requested an administrative hearing after her application was denied initially and on

reconsideration. *Id.* A hearing was held before Administrative Law Judge ("ALJ") John D.

Sullivan on December 1, 2016. Tr. 40-65. In a written decision dated December 19, 2016, the

---

[1] In the interest of privacy, this Opinion uses only the first name and initial of the last name of
the non-governmental party in this case.

[2] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the
Commissioner (ECF No. 11).

ALJ determined Plaintiff was not disabled under the Act from May 1, 2013, through the date of the ALJ's decision. Tr. 18-29. For the reasons discussed herein, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. *Id.* At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work

after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. *Id*. If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Born in 1970, Plaintiff was 42 years old on the alleged disability onset date and 46 years old on the date of her hearing. Tr. 28. She has a master's degree in social work. Tr. 46. Plaintiff previously worked as a case worker and teacher aide. Tr. 27. She alleged disability due to migraines, neck pain, posttraumatic stress disorder ("PTSD"), depression, anxiety, and panic attacks. Tr, 24, 162.

The ALJ determined Plaintiff had the following severe impairments: major depressive disorder, PTSD, generalized anxiety disorder, and impulse control disorder. Tr. 20. The ALJ further found Plaintiff's neck pain, migraines, obesity, and remitted opioid dependence were non-severe impairments. Tr. 20-21. The ALJ resolved that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except she was limited to understanding, remembering, and carrying out instructions for simple, routine tasks; making simple, work-related decisions generally, and when dealing with changes in the workplace setting; occasional interaction with supervisors, co-workers, and the general public; and her time off task would be accommodated by normal breaks. Tr. 23. The ALJ determined Plaintiff was unable to return to her past relevant work; however, the ALJ found Plaintiff could perform other jobs in the national economy, such as cleaner/housekeeping, marker, and small products assembler. Tr. 27-29. Therefore, the ALJ concluded Plaintiff was not disabled under the Act. Tr. 29.

Plaintiff raises a host of arguments challenging the ALJ's findings and ultimate non-disability determination. However, because the ALJ's erroneous treatment of Plaintiff's migraines is dispositive, I decline to discuss the remainder of Plaintiff's arguments.

## I.       Plaintiff's Migraines

The ALJ erred by failing to find Plaintiff's migraines were a severe impairment at step two. The step-two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 147, 153-54 (1987). An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). However, if an ALJ fails to properly identify a severe impairment at step two, but properly considers the erroneously omitted impairment at subsequent steps of the sequential evaluation process, the step two error is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ found Plaintiff's migraines were "non-severe," because the frequency and severity of Plaintiff's migraines were purportedly relieved by medication. Tr. 20-21. The record demonstrates, however, that Plaintiff's tortured course of treatment provided some relief, but did not effectively treat her migraines. Contrary to the ALJ's finding that Plaintiff did not report an exacerbation in her migraine symptoms until early 2015, Plaintiff's migraines and corresponding treatments are well documented throughout the record. *See*, *e.g.*, Tr. 283-84, 296, 302, 309, 315-16, 320, 324, 343, 429, 435, 441, 445, 533-34, 646, 670-71, 685, 701. Further, Plaintiff's photophobia was documented on numerous occasions, she required the lights dimmed at several of her appointments, an MRI of Plaintiff's brain taken in April 2015 revealed "tiny scattered white matter hyperintensities [that] could relate to chronic migraine headaches," and her eye

examinations were inconsistent due to migraines and associated blurry vision. *See*, *e.g.*, Tr. 284, 288-89, 307, 310, 314, 339, 353, 429, 435 441, 429, 533, 672-73, 678, 685, 690. Indeed, even the April 2015 treatment record cited by the ALJ in support of his non-severity finding notes that prior to reporting an increase in her migraines due to exacerbating an "old neck injury," Plaintiff was experiencing two migraines per week on average. Tr. 429.

Plaintiff tried numerous treatments to prevent and alleviate her migraine symptoms, including a trigger point injection, acupuncture, chiropractic care, and tai chi, as well as prescriptions for propranolol, nadolol, baclofen, sumatriptan, meloxicam, amitriptyline, oxycodone, relpax, and ketorolac. *See*, *e.g.*, 165, 303, 307, 315, 408, 426, 779, 782. The ALJ mischaracterized the record in finding that while Cymbalta was not necessarily effective for Plaintiff's depression and chronic pain symptoms, it provided some decrease in the frequency and severity of Plaintiff's migraines. Tr. 20 (citing Tr. 402). Although Plaintiff reported in July 2014 that she noticed "some decrease" in the severity and frequency of her migraines while taking Cymbalta, Dr. Bradford discontinued use of Cymbalta because the drug made Plaintiff's "energy levels worse," she was sleeping 12 to 14 hours per day and feeling "really depressed," and her social anxiety was "bad." Tr. 402. As noted by the ALJ, even when Plaintiff reported her medications were helping "a lot" in October 2013, she was still experiencing three or four migraines per month. Tr. 20 (quoting Tr. 296). Similarly, when Plaintiff reported in September 2013 that baclofen "helped significantly to reduce her headache frequency and severity," she was still experiencing one migraine per week. Tr. 297-98. If Plaintiff was still experiencing migraines on a weekly basis when she reported her medications were helping "a lot" and "significantly" reduced her migraines, then her reports of experiencing "some decrease" in migraine symptoms

from Cymbalta—which caused deleterious side effects—cannot reasonably support the ALJ's finding of effective migraine treatment.

In addition, the ALJ's finding that Plaintiff's migraines were due to "hormonal fluctuations" that could be managed by her treatment providers was not supported by substantial evidence. Tr. 20. Contrary to the ALJ's finding, attempts by Plaintiff's treatment providers to manage her hormone levels actually exacerbated her migraine symptoms. Tr. 282-83, 487, 663. Moreover, the record demonstrates that in addition to her menstrual cycle, Plaintiff's migraines were also triggered by fluorescent lights, the smell of perfume, driving prolonged distances, noise, missing a meal, alcohol, stress, cold weather, certain foods, neck pain, and standing on a hard floor for too long. Tr. 293, 309, 316, 429, 666. It is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the ALJ's error is compounded by the fact that even during Plaintiff's periods of improvement, she was still experiencing a significant number of migraines.

The Commissioner argues the ALJ's step-two error was harmless because the ALJ resolved step two in Plaintiff's failure and considered limitations related to Plaintiff's migraines later in the sequential analysis. The Commissioner's argument is unavailing. The ALJ's erroneous basis for finding Plaintiff's migraines non-severe prejudiced the subsequent steps of the analysis concerning Plaintiff's migraines. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (noting error at step two must prejudice the remaining steps not decided in the claimant's favor to warrant reversal of the ALJ's decision). Specifically, the ALJ relied on the same flawed reasoning to reject Plaintiff's subjective symptom testimony and the medical opinion of

Plaintiff's treating provider, Kristin Bradford, M.D. *See* Tr. 26 (ALJ expressly referring to step-two findings as basis for rejecting Plaintiff's testimony and Dr. Bradford's medical opinion).

At the hearing, Plaintiff testified, in relevant part, that she experienced migraines "a couple of times a week" on average. Tr. 56. She could sometimes function through a migraine, but "not usually." *Id.* Plaintiff had a "protocol" for when she felt a migraine coming on. Tr. 57. She would "start out with Imitrex" and work her "way up in the medications" until she found relief from her migraine. *Id.* She would also retreat to a dark, quiet room to sleep until her migraine pain resolved, which typically took "anywhere from a half hour to four hours." *Id.*

Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's subjective testimony must be clear and convincing. *Burch*, 400 F.3d at 680.[3] The ALJ must identify what testimony is inconsistent with the record and what evidence undermines the claimant's complaints. *Id.*; *Reddick*, 157 F.3d at 722. The evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Finally, the ALJ must make sufficiently specific findings to permit the court to conclude that the ALJ did not arbitrarily reject the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ rejected Plaintiff's testimony about her migraines for the same reason he found her migraines non-severe at step two. As discussed, however, the ALJ's finding that "consistent use of medication adequately manages the claimant's headache[] symptoms" is not supported by substantial evidence. Tr. 25. Moreover, Plaintiff's reported activities are not inconsistent with her testimony that at a minimum she experiences migraines on a weekly basis. Although daily living activities may provide a basis for discounting subjective symptoms if the

---

[3] The ALJ did not find evidence of malingering. Tr. 24-25.

plaintiff's activities either contradict her testimony or meet the threshold for transferable work skills, neither justification is present here. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ found Plaintiff's "functioning ha[d] actually improved over the adjudicatory period" because in July 2016 she reported "she was more active, walking more, cleaning house, folding laundry, taking care of dogs, and doing 'Pokémon GO'[4] with her kids." Tr. 26 (citing Tr. 726). Nevertheless, Plaintiff's minimal and sporadic activities are not inconsistent with her reports of weekly migraines, and the ALJ made no finding as to how Plaintiff's reported activities met the threshold for transferable work skills. *See Reddick*, 157 F.3d at 722 (noting disability claimants "need not vegetate in a dark room in order to be deemed eligible for benefits," and "should not be penalized for attempting to lead normal lives in the face of their limitations.") (citations and quotation marks omitted). As noted by the Ninth Circuit, "'many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Accordingly, Plaintiff's activities of daily living were not a clear and convincing reason for rejecting her migraine symptoms.

---

[4] "Pokémon Go is a mobile [augmented reality game] that debuted with 151 distinct characters up for grabs, and avid players aim to 'catch 'em all.'" Danielle Nicole Craft, *Common Law Consequences of Catching 'Em All: Exclusionary Property Rights in Augmented Space and an Alternative Notice/opt-Out Procedure for Location-Based Augmented Reality Technology*, 48 Seton Hall L. Rev. 841, 845 (2018) (citations omitted). Players use "their smartphones to hunt and find digital creatures and objects that are placed virtually . . . into the gaming board (*i.e.*, the smartphone screen)." Donald J. Kochan, *Playing with Real Property Inside Augmented Reality: Pokemon Go, Trespass, and Law's Limitations*, 38 Whittier L. Rev. 70, 75 (2018) (citations omitted).

Plaintiff's primary care physician, Dr. Bradford, submitted a medical opinion in November 2016. Tr. 777-81. Dr. Bradford noted that she began treating Plaintiff in June 2012. Tr. 777. Regarding Plaintiff's migraines, Dr. Bradford opined that Plaintiff typically experienced two migraines per week. Tr. 778-79. The doctor noted that Plaintiff could recover from a migraine "in a couple of hours if she is able to sleep [in a dark room] and has taken prescription medications"; however, migraines that did not "respond to medication c[ould] last all day and all night." Tr. 778. Dr. Bradford concluded that Plaintiff would not be able to maintain a regular work schedule for more than four days per month. Tr. 781.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If, however, the opinion is contradicted by that of another doctor, then the ALJ need only provide "specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Here, the ALJ's reasons for giving "little weight" to Dr. Bradford's opinion do not pass muster regardless of what standard governs, because the ALJ rejected Dr. Bradford's opinion for the same erroneous reasons he used to reject Plaintiff's symptom testimony and find her migraines non-severe at step two. Tr. 26 ("As discussed at [step-two] . . . Dr. Bradford's opinion is inconsistent with the claimant's treatment history and the claimant's reported activities."). Accordingly, the ALJ erred in rejecting Dr. Bradford's opinion concerning Plaintiff's migraines.

Finally, the ALJ's RFC limitation to "simple, routine instructions, tasks, and work-related decisions" does not account for Plaintiff's migraine symptoms. The RFC is the "*most* [a claimant] can still do despite [the claimant's] limitations," and is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1) (emphasis added). The court fails to

see how limiting Plaintiff to simple and repetitive tasks could accommodate her need to spend up to several hours sleeping in a dark room to alleviate her frequent migraines. As such, the ALJ's RFC determination is defective. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (noting "an ALJ is not free to disregard properly supported limitations" when crafting the RFC).

## II.     The Credit-as-True Doctrine

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). However, an award of benefits may be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292. Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted). However, even if all the requirements of the analysis are met, a court may nevertheless remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the[] Act.'" *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)).

The first element is satisfied because "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* Further proceedings "are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations, quotation marks, and bracketing omitted). As discussed, Plaintiff's migraines and accompanying symptoms are well documented throughout the record. Furthermore, the ALJ gave "little weight" to the only medical source opinion that found Plaintiff capable of working. Tr. 27, 84-86. Thus, there are no conflicts or ambiguities that need to be resolved concerning Plaintiff's migraines.

The second element is satisfied because the ALJ erred by failing to provide legally sufficient reasons for finding Plaintiff's migraines non-severe at step two, rejecting Plaintiff's subjective symptom testimony, and giving little weight to Dr. Bradford's opinion.

Finally, the third element is satisfied because crediting the improperly rejected evidence requires finding Plaintiff disabled. When credited-as-true, Plaintiff's testimony and Dr. Bradford's opinion establish that Plaintiff experiences a minimum of three or four migraines per month, the medications Plaintiff takes to abort her migraines cause drowsiness, Plaintiff typically requires up to four hours in a dark, quiet room to recover from her migraines, and she would miss four or more days of work per month due to her migraines. At the hearing, the vocational expert ("VE") testified that an individual who needed to take unscheduled breaks or would miss two or more days of work per month would be precluded from "all competitive employment." Tr. 63-64. Accordingly, the VE's testimony warrants finding Plaintiff is disabled within the meaning of the Act.

**CONCLUSION**

For these reasons, the Commissioner's decision is REVERSED, and this case is

REMANDED for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 28th day of June, 2019.


s/Michael J. McShane_____
Michael McShane
United States District Judge